******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* TERRY FREEMAN
## (SC 20554)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.*

*Syllabus*

Convicted, on a conditional plea of nolo contendere, of the crime of robbery
in the first degree, the defendant appealed to the Appellate Court, claim-
ing that his prosecution was time barred by the applicable five year
statute of limitations ((Rev. to 2017) § 54-193 (b)) because, although the
warrant for his arrest was issued two weeks before the expiration of
the limitation period set forth in § 54-193 (b), it was executed one week
after its expiration. The defendant had filed a motion to dismiss, which
the trial court denied, finding that, because there was at least some
evidence that the state had made efforts to execute the warrant before
the expiration of the limitation period, the delay in the execution of the
warrant was reasonable. At the hearing on that motion, the prosecutor
relied on a stipulation of facts setting forth a relevant chronology of
events. The stipulation provided that, while incarcerated on unrelated
charges in early November, 2018, the defendant confessed to his involve-
ment in the robbery, which occurred on November 29, 2013. On Novem-
ber 19, 2018, the police obtained a signed warrant for the defendant's
arrest and requested that the Office of the State's Attorney prepare an
application for a writ of habeas corpus to have the defendant transported
from the correctional facility at which he was incarcerated to the trial
court, where he could be served with the warrant. The Office of the
State's Attorney prepared the application for a writ of habeas corpus
on November 21, 2018, but it was not signed until November 27, 2018.
Thereafter, on December 6, 2018, the defendant was transported to
court, where he was served with the warrant. The prosecutor adduced
no additional evidence at the hearing, aside from the arrest warrant and
the writ of habeas corpus. When the trial court asked the prosecutor
to explain the three week delay between the issuance and execution of
the arrest warrant, he stated that the warrant was not picked up until
two days after it was signed by the judge and that the Thanksgiving
holiday took place during the period between when the application for
the writ of habeas corpus was prepared and signed. He also explained
that the procedure for transporting an inmate to court involves various
factors, including staff availability, limits on how many inmates can
be transported on a given day, and coordination among various state
agencies, such that a one week delay between the signing of a writ of
habeas corpus and the transport of an inmate was not unusual. On
appeal to the Appellate Court from the denial of the defendant's motion
to dismiss, that court affirmed, concluding that the trial court had cor-
rectly determined that there was sufficient evidence to establish that
the delay in the service of the arrest warrant after the expiration of the
statute of limitations was reasonable. On the granting of certification,
the defendant appealed to this court. *Held* that the state failed to satisfy
its burden of establishing that it acted with due diligence in its efforts
to execute the arrest warrant within the limitation period without unrea-
sonable delay, and, accordingly, the judgment of the Appellate Court
was reversed and the case was remanded with direction to reverse the
trial court's judgment and to order the trial court to grant the defendant's
motion to dismiss: once a defendant demonstrates his nonelusiveness
and his availability for arrest during the time period between the issuance
and the execution of a warrant, the burden shifts to the state to present
evidence of its due diligence and reasonable efforts in executing the
warrant, and this court clarified that, to satisfy that burden, the state
must produce admissible evidence to explain the reasonableness of the
delay and to demonstrate its due diligence, which does not include the
unsworn factual representations of counsel, insofar as such assertions
cannot be tested in the crucible of cross-examination; in the present
case, the parties did not dispute that the defendant met his burden of
demonstrating his availability for arrest during the statutory period and,

therefore, that the burden shifted to the state to present evidence of its due diligence in executing the warrant; moreover, the stipulation on which the state relied was an unadorned chronology of events that, despite reflecting a three week delay between the issuance and execution of the arrest warrant, did not reveal the reasons for the various delays or explain how the efforts undertaken to execute the warrant reflected the state's due diligence, no evidence was presented at the hearing to establish the facts underlying the prosecutor's assertions that the delay was caused by a holiday and general logistical factors affecting the transportation of inmates, and the prosecutor could not explain why the state did not try to arrange for the transportation of the defendant before the expiration of the statute of limitations.

*(One justice concurring separately; three justices dissenting in one opinion)*

Argued February 17—officially released August 30, 2022

*Procedural History*

Information charging the defendant with the crimes of robbery in the first degree, conspiracy to commit robbery in the first degree, larceny in the fifth degree, and criminal possession of a firearm, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Brown, J.*, denied the defendant's motion to dismiss; thereafter, the defendant was presented to the court, *Brown, J.*, on a conditional plea of nolo contendere to the charge of robbery in the first degree; judgment of guilty in accordance with the plea; subsequently, the state entered a nolle prosequi as to the charges of conspiracy to commit robbery in the first degree and criminal possession of a firearm, and the court dismissed the charge of larceny in the fifth degree; thereafter, the defendant appealed to the Appellate Court, *Bright, C. J.*, and *Cradle* and *Alexander, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*James E. Mortimer*, assigned counsel, for the appellant (defendant).

*Thadius L. Bochain*, deputy assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, *Matthew R. Kalthoff*, assistant state's attorney, and *Samantha L. Oden*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. The defendant, Terry Freeman, appeals from the judgment of the Appellate Court affirming his conviction of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), following the entry of a conditional plea of nolo contendere. The sole issue on appeal is whether the prosecution of the defendant was time barred by the five year statute of limitations set forth in General Statutes (Rev. to 2017) § 54-193 (b)[1] on the ground that the state failed to establish that the warrant for the defendant's arrest was executed without unreasonable delay. See *State* v. *Swebilius*, 325 Conn. 793, 802, 159 A.3d 1099 (2017); *State* v. *Crawford*, 202 Conn. 443, 451, 521 A.2d 1034 (1987). We conclude that the state failed to produce sufficient evidence to establish that the arrest warrant was executed with due diligence, and, accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following relevant facts, which we supplement with additional undisputed facts as necessary. "On November 5, 2018, Jeffrey Gabianelli, a detective with the West Haven Police Department, received a letter from the defendant containing information about an armed robbery that had occurred at the Wine Press Liquor Store in West Haven on November 29, 2013. The next day, Gabianelli visited the defendant at the Carl Robinson Correctional Institution in Enfield, where the defendant was incarcerated on unrelated charges. The defendant confessed to Gabianelli as to his involvement in the November 29, 2013 robbery. On November 9, 2018, Gabianelli prepared an arrest warrant. On November 15, 2018, a Superior Court judge signed the warrant. On November 19, 2018, John Laychak, a West Haven police officer, obtained the signed warrant and submitted a request that the Office of the State's Attorney prepare an application for a writ of habeas corpus to transport the defendant to the Superior Court in the judicial district of Ansonia-Milford for service of the arrest warrant. On November 21, 2018, the Office of the State's Attorney prepared the application for a writ of habeas corpus requesting that the defendant be transported to the court on December 6, 2018. On November 27, 2018, a prosecutor and a clerk of the court signed the writ of habeas corpus. On December 6, 2018, the defendant was transported to the Superior Court where he was served with the arrest warrant.

"Thereafter, the defendant filed a motion to dismiss, claiming that the prosecution was barred due to the lapse of the five year statute of limitations set forth in § 54-193 (b). The defendant argued that the statute of limitations had lapsed on November 29, 2018, five years after the robbery had occurred, and that the state had failed to proffer sufficient evidence to show that the delay in the execution of the arrest warrant until Decem-

ber 6, 2018, was reasonable." (Footnotes omitted.) *State* v. *Freeman*, 201 Conn. App. 555, 557–58, 242 A.3d 1059 (2020).

The trial court, *Brown, J.*, held an evidentiary hearing on the defendant's motion to dismiss. The prosecutor conceded that the defendant had met his burden of demonstrating that he "lived openly, was nonelusive, and was available for arrest throughout the relevant period of limitation" and, thus, that the burden shifted to the state to demonstrate that the warrant was executed without unreasonable delay. See *State* v. *Swebilius*, supra, 325 Conn. 807 ("[o]nce the defendant has presented evidence of his availability for arrest, it is reasonable and proper that the burden should then shift to the state to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable"). To fulfill that burden, the state relied on a written stipulation of facts agreed on by the parties, which set forth the relevant chronology of events described previously in this opinion. The state adduced no additional evidence, aside from the arrest warrant application issued on November 15, 2018, and the writ of habeas corpus dated November 21, 2018.

The trial court asked the prosecutor to explain the delay between the issuance of the arrest warrant on November 15, and its execution on December 6. The prosecutor explained that the court liaison officer did not pick up the signed warrant until Monday, November 19, and that he had no "information as to why [the warrant] wasn't picked up on [that] Friday [i.e., November 16]," but "the court liaison officer would . . . pick up the warrant [only] during the business day, so that would account, at least in part, for that four day gap . . . ." The prosecutor did not offer an explanation for the two day gap between November 19, and November 21, the date on which the state prepared the application for the writ of habeas corpus. Regarding the six day gap between November 21, and November 27, the date on which the writ of habeas corpus was signed, the prosecutor explained that Thursday, November 22, was the Thanksgiving holiday and that Friday, November 23, was "a relatively light day . . . ." As for the nine day gap between November 27, and December 6, the date on which the defendant was transported and the warrant was executed, the prosecutor explained that the transport was arranged "as a matter of course" in light of the various "factors that play in effectuating the transport of an inmate to [the] court," such as the availability of staff, the maximum number of inmates that may be transported on a given day, and the necessary coordination among the relevant state agencies. The prosecutor "could offer no explanation as to why the defendant was not transported to court for service of the warrant on or before November 29, 2018, except to say that a one week delay between the signing of a habeas writ and the transport of a defendant was

not unusual."

The trial court denied the defendant's motion to dismiss, finding "that the state, in fact, made at least some effort to execute the warrant on or before November 29, 2018. The state acted reasonably and diligently to follow up on the defendant's letter, to obtain his confession, and to prepare an arrest warrant for court review and action. Once the warrant was issued, the state acted reasonably and made at least some effort to have the defendant brought to court for execution of the warrant." Although the statute of limitations expired seven days before the warrant was executed, the trial court found "at least some evidence explaining why the delay was reasonable. The writ had to be prepared and approved before the defendant could be ordered transported to court." Significantly, the court noted that "[t]he state should have been more mindful that, as of November 15, 2018, [the state] . . . had [only] fourteen more days to get the warrant executed to be within the five year limitation period" but determined that, because the state made some "efforts to meet the November 29, 2018 [expiration] date," the delay in the execution of the warrant was reasonable.

The defendant thereafter entered a conditional plea of nolo contendere to the charge of robbery in the first degree. The trial court sentenced the defendant to one year of imprisonment, consecutive to his current sentence.

The defendant appealed from the trial court's judgment to the Appellate Court, claiming that the trial court had improperly denied his motion to dismiss because (1) it misinterpreted and misapplied the legal standard set forth in *State* v. *Crawford*, supra, 202 Conn. 443, and *State* v. *Swebilius*, supra, 325 Conn. 793, and (2) there was insufficient evidence to establish that the delay in the service of the arrest warrant after the expiration of the statute of limitations was reasonable. See *State* v. *Freeman*, supra, 201 Conn. App. 559. The Appellate Court rejected the defendant's first claim, explaining that *Swebilius* neither "qualif[ies] the efforts the state must show to satisfy its burden nor explain[s] the degree of effort necessary." Id., 563. Instead, "the state must prove that any delay in serving the warrant beyond the statute of limitations was reasonable. What efforts the state made to accomplish service and the reasons why service was not accomplished before the statute of limitations expired are necessary parts of the court's reasonableness analysis." Id., 564. The Appellate Court concluded that "the [trial] court applied the correct legal test as set forth by [this court] in *Swebilius* and by [the Appellate Court] in [other cases]." Id., 566.

Regarding the sufficiency of the evidence produced by the state, the Appellate Court determined that the state had fulfilled its burden of demonstrating that it made reasonable efforts to obtain and execute the

arrest warrant, reasoning that, "[f]ollowing the defendant's confession to [the detective], the state made continuous efforts to obtain a warrant and to facilitate the appropriate transportation of the defendant to the Superior Court for the execution of that warrant; efforts that were all made before the statute of limitations expired." Id. Although the defendant was not transported and served with the warrant until seven days after the expiration of the statute of limitations, the Appellate Court opined that "the nine day delay from the signing of the habeas writ to the transportation of the defendant was not unusual, as a matter of course, given the logistical, practical and safety precautions that must be taken whenever an incarcerated individual is transported from a correctional facility to a courthouse." Id., 567–68. The court further explained that it was "within the purview of the trial court to use its knowledge of the inner workings of the courts and the process by which incarcerated persons are transported to a court in its determination of the reasonableness of the state's efforts." Id., 568. Accordingly, the Appellate Court affirmed the judgment of conviction. Id.

On appeal to this court,[2] the defendant claims that the Appellate Court improperly upheld the trial court's denial of his motion to dismiss on the basis of its conclusion that the state executed the arrest warrant without unreasonable delay. The defendant contends that "[t]here was no evidence of any effort by the state to attempt to execute the warrant before the statute of limitations expired or any evidence offered to explain why the state's failure to do so was reasonable under these circumstances." The state responds that the Appellate Court correctly concluded that the trial court's denial of the defendant's motion to dismiss was proper because the state fulfilled its burden of proving that the warrant was executed without unreasonable delay. We agree with the defendant.

The standard of review on a motion to dismiss is well established. "Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the [trial] court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo." (Internal quotation marks omitted.) *State* v. *A. B.*, 341 Conn. 47, 55, 266 A.3d 849 (2021). Whether a warrant was executed within a reasonable period of time under § 54-193 (b) ordinarily "is a question of fact that will depend on the circumstance of each case." *State* v. *Crawford*, supra, 202 Conn. 451. In the present case, however, the facts are undisputed, and the sole question is whether the stipulated facts are sufficient to demonstrate that the state fulfilled its burden of proving that it executed the warrant with due diligence. Under these circumstances, we review the trial court's reasonableness conclusion de novo. See *Jones* v. *State*, 328 Conn.

84, 101, 177 A.3d 534 (2018) (observing that, "when the facts are undisputed, determining the legal import of those facts presents a question of law subject to de novo review"); *One Country, LLC* v. *Johnson*, 314 Conn. 288, 300, 101 A.3d 933 (2014) ("when the facts are undisputed," application of legal standard is "a question of law over which we exercise plenary review"); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 219 Conn. 51, 62, 591 A.2d 1231 (1991) (same); see also *Nelson* v. *State Farm Mutual Automobile Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) ("[w]hether a court properly applied a statute of limitations and the date a statute of limitations accrues under undisputed facts are questions of law we review de novo"); *Spitsyn* v. *Moore*, 345 F.3d 796, 799 (9th Cir. 2003) ("[i]f the facts underlying a claim for equitable tolling are undisputed, the question of whether the statute of limitations should be equitably tolled is . . . reviewed de novo").

We begin our analysis with the relevant case law. In *State* v. *Crawford*, supra, 202 Conn. 443, this court held that the issuance of an arrest warrant within the limitation period set forth in General Statutes (Rev. to 1983) § 54-193 (b) commences a prosecution for purposes of satisfying the statute of limitations, so long as the warrant is executed without unreasonable delay. See id., 450–51. In *Crawford*, the state had issued a warrant for the arrest of the defendant, Ronald L. Crawford, approximately two months after the commission of the charged offenses, but the warrant was executed more than one year after the statute of limitations lapsed. Id., 445. Crawford filed a motion to dismiss the charges against him, arguing that, because he was not prosecuted within the one year limitation period, the prosecution was time barred. Id. We explained that, "[w]hen an arrest warrant has been issued, and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is [satisfied]."[3] (Footnote omitted.) Id., 450. "We recognize[d], however, that some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation[s]." Id. We therefore concluded that, "in order to [satisfy] the statute of limitations, an arrest warrant, when issued within the time limitations . . . must be executed without unreasonable delay." Id., 450–51.

We declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable." Id., 451. Instead, we clarified that "[a] reasonable period of time is a question of fact that will depend on

the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, *failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to [satisfy] the statute of limitations.*" (Emphasis added.) Id.

In *State* v. *Swebilius*, supra, 325 Conn. 793, we considered whether a brief delay in the execution of an arrest warrant could be per se reasonable. The defendant, Jon Swebilius, was arrested thirty-two days after the issuance of the warrant for his arrest and thirteen days after the expiration of the applicable five year statute of limitations. Id., 796. Swebilius "moved to dismiss the charge on the ground that the prosecution was barred by the statute of limitations because . . . the delay in the execution of the warrant was unreasonable." Id. We concluded that the Appellate Court had "incorrectly determined that some delays in the execution of an arrest warrant may be so brief as to be reasonable as a matter of law for the purpose of [satisfying] the applicable statute of limitations." Id., 801.

We explained that, "once the defendant has demonstrated his availability for arrest, he has done all that is required to carry his burden; the burden then shifts to the state to demonstrate that any period of delay in executing the warrant was not unreasonable." Id., 804; see *State* v. *Woodtke*, 130 Conn. App. 734, 740, 25 A.3d 699 (2011). The "burden shifting scheme" required by *Swebilius* "encourages diligence by law enforcement officials in providing timely notice of charges to defendants." *State* v. *Swebilius*, supra, 325 Conn. 808. We "decline[d] to specify the precise actions that [law enforcement officials] must undertake to serve a warrant with due diligence, or the precise time line within which they must act," but held that "such officials must present some credible and persuasive factual basis for inaction when they fail to observe the statute of limitations. This requirement is consistent with the principle that, when a judicial doctrine, for all practical purposes, extends the statute [of limitations] beyond its stated term, that doctrine should be applied in only limited circumstances . . . ." (Internal quotation marks omitted.) Id., 808–809. We emphasized that such a rule "is not intended to impose an undue burden on the state"; id., 814; but to effectuate "the purposes of statutes of limitations," namely, "prevent[ing] the unexpected enforcement of stale and fraudulent claims" and "aid[ing] in the search for truth that may be impaired by the loss of evidence" due to the passage of time. (Internal quotation marks omitted.) Id., 812.

The burden imposed on the state is not onerous, but neither is it trivial. Although the dissent accurately

observes that *Swebilius* (on a single occasion) referred to the requirement that the state "make *some effort* to serve the arrest warrant before the relevant statute of limitations expires"; (emphasis added) id., 814; *Swebilius* otherwise uniformly characterized the state's burden as requiring "*reasonable* efforts"; (emphasis added) id., 815; or evidence of "due diligence . . . ." Id., 808; accord id., 804 n.8, 812. The dissent is correct that these standards are all "functionally equivalent"—but they are equivalent only if "some effort" is understood to require reasonable and diligent efforts. The dissent goes too far, and would empty *Swebilius* of its significance, by suggesting that a single reference in *Swebilius* to "some effort," in contrast to its more than one dozen references to "reasonable efforts" and "due diligence," means that the state satisfies its burden by making anything less than reasonable and diligent efforts. Indeed, that burden is no burden at all because it allows the state to satisfy the statute of limitations by ignoring it entirely, and simply to proceed with business while exhibiting no regard for, or even awareness of, the statutory deadline. That meaning is the opposite of what *Swebilius* intended when it stated that "a rule making some delays reasonable without any showing of *due diligence* is inconsistent with the purposes of the statutes of limitations." (Emphasis added.) *State* v. *Swebilius*, supra, 325 Conn. 812. We reaffirm that, once a defendant's availability for arrest is established, the state must demonstrate that it made diligent efforts to execute an arrest warrant within the limitation period or "offer some *evidence* explaining why its failure to do so was reasonable under the circumstances."[4] (Emphasis added.) Id., 814; see *State* v. *Ali*, 233 Conn. 403, 416, 660 A.2d 337 (1995) ("the issuance of an arrest warrant is sufficient 'prosecution' to satisfy the statute of limitations only if the warrant is executed with *due diligence*" (emphasis added)); *State* v. *Crawford*, supra, 202 Conn. 452 (same).

In the present case, the parties do not dispute that the defendant fulfilled his burden of demonstrating his availability for arrest during the statutory period and, therefore, that the burden shifted to the state "to present evidence of its due diligence in executing the warrant." *State* v. *Swebilius*, supra, 325 Conn. 803. We emphasize that the requirement of "evidence" to satisfy the state's burden under *Swebilius* must not be overlooked. "Evidence" in this context means what it normally means, namely, the formal presentation in a judicial proceeding of testimony, documents, or exhibits " 'to prove or disprove the existence of an alleged fact . . . .' " *Voris* v. *Middlesex Mutual Assurance Co.*, 297 Conn. 589, 602, 999 A.2d 741 (2010), quoting Black's Law Dictionary (9th Ed. 2009) p. 635. "Fairly stated, evidence legally is the means by which alleged matters of fact are properly submitted to the trier of fact for the purpose of proving a fact in issue. On the other

hand, 'proof' is the result or the effect of such 'evidence.' Moreover, [counsel's] representations [are] not 'testimony,' which, in turn, when given under oath or stipulated to, is a species of 'evidence.' " *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 153–54, 496 A.2d 476 (1985); see *Federal National Mortgage Assn.* v. *Buhl*, 186 Conn. App. 743, 751, 201 A.3d 485 (2018) ("[u]nsworn 'representations of counsel are not, legally speaking, evidence' [on] which courts can rely"), cert. denied, 331 Conn. 906, 202 A.3d 1022 (2019); *Constantine* v. *Schneider*, 49 Conn. App. 378, 395, 715 A.2d 772 (1998) (same).

To fulfill its burden of proof regarding the delay in the execution of the warrant, the state was required to produce admissible *evidence* to explain the delay. The unsworn factual representations of counsel, which cannot be tested in the crucible of cross-examination, are not evidence on which the state may rely to fulfill its burden of production and persuasion. Cf. *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 255 n.9, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (party bearing evidentiary burden of proof "cannot meet its burden merely through . . . argument of counsel"); *Pretzantzin* v. *Holder*, 736 F.3d 641, 651 (2d Cir. 2013) (government failed to fulfill burden of production because "the arguments of counsel are not evidence . . . and the [g]overnment failed to make any evidentiary proffer" (citation omitted)). This important precept derives from the recognition that "[s]tatements as to facts that have not been proven [or subject to cross-examination] amount to unsworn [and unchecked] testimony . . . ." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002). Allowing assertions of counsel to serve as evidence, moreover, erases the elemental and crucial distinction between advocate and witness in our adversary system. See Rules of Professional Conduct 3.7 (prohibiting lawyer from testifying as witness except in certain circumstances not at issue in present case).

The question, then, is whether the stipulation of facts, arrest warrant application, and writ of habeas corpus constituted sufficient evidence to establish that the state acted with due diligence in executing the warrant such that the delay in the execution was not unreasonable. Although we have not defined the term "due diligence" in this context, we previously have observed that "[d]ue diligence does not require omniscience. Due diligence means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *Skakel* v. *State*, 295 Conn. 447, 507, 991 A.2d 414 (2010); see *In re Samantha C.*, 268 Conn. 614, 632, 847 A.2d 883 (2004) (in context of termination of parental rights, reasonable efforts to reunify family means "doing everything reasonable, not everything possible" (internal quotation marks omitted)). Due diligence does not require a party to do everything possible to attain its objective, but, at the

same time, it requires something more than nonchalance. The state exercises due diligence, in short, if it undertakes efforts to execute a warrant "by persevering application . . . [made] in good earnest." (Internal quotation marks omitted.) *Skakel* v. *State*, supra, 507, quoting *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 672, 461 A.2d 1380 (1983).

We conclude that the evidence adduced by the state was insufficient to meet its burden of demonstrating that it exercised due diligence in its efforts to execute the warrant within the limitation period without unreasonable delay. The record reflects that the warrant was issued on November 15, 2018, but was not executed until three weeks later, on December 6, 2018, seven days after the expiration of the five year statute of limitations on November 29, 2018. The three week delay requires explanation in the form of *evidence* to establish that the delay was not unreasonable. Although the state prepared a writ of habeas corpus requesting the transportation of the defendant on November 21, 2018, eight days before the expiration of the limitation period, the writ was not signed by the prosecutor and the clerk of the court until six days later, on November 27, 2018. Additionally, the defendant was not transported to court, and the warrant was not executed, until December 6, 2018, nine days after the habeas writ was signed and seven days after the expiration of the limitation period. The stipulated facts do not reveal the reasons for these delays. Nor do they explain how the efforts undertaken to execute the warrant reflect due diligence by the state.

At the hearing on the defendant's motion to dismiss, the lack of evidence regarding these critical issues was highlighted by the fact that the trial court found it necessary to ask the prosecutor to explain the reason for the delay in the execution of the warrant. The prosecutor cited state holidays, weekends, a "light" work day, and his own assessment of general logistical factors affecting the transportation of inmates, such as "certain limitations on the staff of [the] court with respect to how many inmates will be housed downstairs on any particular day" and "the involvement of other agencies, notably, the judicial marshals . . . ." According to the prosecutor, as "a matter of course and a matter of courtesy," the state does not "[make] a habit of requesting transport a day later, [or] two days later," but prefers to give "a little bit of lead time for the relevant agencies . . . to plan the transport . . . ." The prosecutor was unable to explain why, in this particular case, the state did not try to arrange for the transportation of the defendant before the expiration of the statute of limitations on November 29, 2018, but maintained that, in general, a delay of two to three weeks is "consistent with [his] office's practice . . . ." No evidence was presented to establish the facts underlying these assertions.

As we previously discussed, representations of counsel are not evidence. For this reason, we reject the suggestion in the concurring opinion that it may be permissible for a party to rely on the representations of counsel to satisfy their respective burdens under *Swebilius*. In *Swebilius*, we made it very clear that the representations of counsel, factual or otherwise, are insufficient. If a statute of limitations defense has been raised, the parties are under an obligation to adduce *evidence* regarding (1) the defendant's availability for arrest during the limitation period, and, if applicable, (2) the state's due diligence in executing the warrant. See *State* v. *Swebilius*, supra, 325 Conn. 803 ("once a defendant presents *evidence* of his availability for arrest during the limitation period, the burden shifts to the state to present evidence of its due diligence" (emphasis added)). We again emphasized the evidentiary nature of the requirement when we noted the near unanimous case law supporting the burden shift: "We note that the cases since *Crawford* that have considered the distribution of burdens in relation to § 54-193 (b) have been nearly uniform in placing the burden on the state *to present evidence* of due diligence." (Emphasis added.) Id., 804 n.8. Indeed, we noted that, "in cases involving relatively brief delays, *evidence* of [the state's] legitimate need to prioritize competing public safety responsibilities may well be sufficient to demonstrate compliance with the dictates of *Crawford*." (Emphasis added.) Id., 814. We even pointed out that the state's evidentiary burden was not onerous and could be satisfied by compiling publicly available governmental statistics. See id., 814–15 n.17. In sum, we are unaware of any case, in Connecticut or elsewhere, that permits a party to satisfy its burden of proof relating to a statute of limitations by relying on the representations of counsel.

Accordingly, the explanations offered by the prosecutor in response to the trial court's search for answers, while no doubt made in good faith, are insufficient to satisfy the state's burden under *Swebilius* to "present some credible and persuasive factual basis for . . . [the state's] fail[ure] to observe the statute of limitations."[5] Id., 808. Although the prosecutor presented the trial court with a stipulated chronology of events, he failed to provide *any* admissible evidence to explain the reasons for the delay in the execution of the warrant.[6] As a result of that evidentiary deficiency, the state failed to fulfill its burden of proving that the warrant was executed with due diligence, and the trial court improperly denied the defendant's motion to dismiss.

The dissent would dilute the requirements of *Swebilius*—and, in the process, the statute of limitations—to require nothing more than "business as usual" without regard to the statutory deadline, and without regard to when the defendant was actually served with process. The dissent opines that the state satisfied its burden

of demonstrating that its efforts to execute the arrest warrant were reasonable because, "before the statute of limitations expired, the state had undertaken all of the necessary preparatory steps for execution of the warrant . . . ." This observation begs the critical question under *Crawford* and *Swebilius*. That question is whether the "preparatory" steps taken by the state, if any, *were sufficient under the applicable legal standard* when the warrant was executed on a nonelusive defendant *after* the expiration of the limitation period. Under those circumstances, our precedent is very clear that the statute of limitations is satisfied only if the warrant is "executed with due diligence" such that there is not "unreasonable delay" between issuance and execution of the warrant. *State* v. *Crawford*, supra, 202 Conn. 451.[7] This burden, once again, obligates the state to demonstrate the reasonableness of the delay between issuance and execution of the warrant by presenting evidence that it sought to meet its obligations by making efforts demonstrating diligence, that is, something more than nonchalance, throughout that time period. For the reasons previously explained, we conclude that the state failed to fulfill this burden.[8]

Finally, we address the appropriate remedy. The state argues that, pursuant to *State* v. *Swebilius*, supra, 325 Conn. 815, the proper remedy is to reverse the judgment of the Appellate Court and to remand the case to the trial court so that the state is " 'afforded the opportunity to demonstrate that it made reasonable efforts to execute the warrant before the expiration of the statute of limitations or to explain why its failure to do so was reasonable under the circumstances.' " We disagree. In *Swebilius*, the proper remedy was to remand the case for further factual development because the trial court applied an incorrect legal standard when it determined that some delays in the execution of a warrant are sufficiently short that they may be deemed reasonable as a matter of law. The trial court's application of the wrong legal standard, combined with our articulation of the burden shifting framework for the first time in *Swebilius*, necessitated a remand so that the trial court could "evaluate the facts in light of [the] correct legal standard." *McDermott* v. *State*, 316 Conn. 601, 611, 113 A.3d 419 (2015). In contrast, in the present case, the trial court applied the correct legal standard, and "any insufficiency in proof was [not] caused by [a] subsequent change in the law" but, rather, by the state's "failure to muster evidence." (Internal quotation marks omitted.) Id. The state was well aware of its evidentiary burden under our precedent but nonetheless elected to offer no evidence other than an unadorned chronology of events. Under these circumstances, we can perceive no reason to provide the state with a second opportunity to meet that burden.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

reverse the trial court's judgment and to remand the case with direction to grant the defendant's motion to dismiss.

In this opinion McDONALD and D'AURIA, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Kahn, Ecker and Keller. Although Justice Mullins was not present at oral argument, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] General Statutes (Rev. to 2017) § 54-193 (b) provides: "No person may be prosecuted for any offense, other than an offense set forth in subsection (a) of this section, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed."

The statute was revised in 2019. See Public Acts 2019, No. 19-16, § 17. All references to the statute in this opinion are to the 2017 revision, unless otherwise noted.

[2] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the trial court properly denied the defendant's motion to dismiss on the basis of its determination that the state had executed the arrest warrant without unreasonable delay?" *State* v. *Freeman*, 336 Conn. 907, 243 A.3d 1180 (2021).

[3] *Crawford* uses the word "toll" rather than "satisfy," but we have since clarified that a distinction exists between "tolling" and "satisfying" the statute of limitations and that the latter term is the more accurate one in the present context. See *State* v. *A. B.*, supra, 341 Conn. 57 n.6 (noting that we previously have "used the term 'tolled,' and other forms of the verb 'toll,' rather than 'satisfied,' to describe the state's meeting its obligation under § 54-193 (b) to have 'prosecuted' a crime within the relevant limitation period" and concluding that " 'satisfie[d]' is the appropriate term to describe the state's meeting such obligation under [the statute]").

[4] The dissent states that "[t]he court in *Swebilius* required the state to provide an explanation only when it failed to make 'some' . . . effort . . . ." We disagree. As we explained in *Swebilius*, "[o]nce the defendant has presented evidence of his availability for arrest, it is reasonable and proper that the burden should then shift to the state *to explain why, notwithstanding the defendant's availability during the statutory period, the delay in his arrest was reasonable.* Doing so allocates burdens efficiently by requiring each party to bring forth evidence uniquely within its knowledge." (Emphasis added.) *State* v. *Swebilius*, supra, 325 Conn. 807. To read *Swebilius* as the dissent suggests is inconsistent with the plain language and clear import of our holding in that case.

[5] As this court recently explained in *A. B.*, "[w]e have long held that the primary purpose of statutes of limitations is to encourag[e] law enforcement officials promptly to investigate suspected criminal activity . . . so as to ensure that a defendant receives notice, within a prescribed time, of the acts with which he is charged . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *A. B.*, supra, 341 Conn. 68–69. "Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." (Internal quotation marks omitted.) Id., 56; see *State* v. *Crawford*, supra, 202 Conn. 450. Although the delay in the execution of the warrant in the present case was relatively brief, we previously have explained that even a brief delay beyond the expiration of the limitation period cannot be deemed "reasonable as a matter of law, solely on the basis of the length of the delay and irrespective of other facts." *State* v. *Swebilius*, supra, 325 Conn. 799 n.5.

[6] We reject the Appellate Court's determination that "it [was] within the purview of the trial court to use its knowledge of the inner workings of the courts and the process by which incarcerated persons are transported to a court in its determination of the reasonableness of the state's efforts." *State* v. *Freeman*, supra, 201 Conn. App. 568. There is no indication in the trial court's decision that it relied on its *own* knowledge of the inner workings of the courts and the process by which incarcerated persons are transported, rather than the prosecutor's factual representations. Stated another way,

there is no indication that the state was excused from fulfilling its burden of proof because the trial court took judicial notice of these facts. See, e.g., *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 730 n.24, 652 A.2d 496 (1995) ("The doctrine of judicial notice excuses the party having the burden of establishing a fact from introducing formal proof of the fact. Judicial notice takes the place of proof." (Internal quotation marks omitted.)). Regardless, the inner workings of the courts and the process by which incarcerated persons are transported are "matters susceptible of explanation or contradiction," and, therefore, the defendant was "entitled to receive notice and have an opportunity to be heard" before the trial court took judicial notice of these facts on its own initiative. Conn. Code Evid. § 2-2 (b); see *Moore* v. *Moore*, 173 Conn. 120, 122, 376 A.2d 1085 (1977) (recognizing distinction "between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing" (citations omitted)). It is undisputed that, to the extent the trial court took judicial notice of these facts, it failed to provide the defendant with the requisite notice and opportunity to be heard.

[7] The dissent acknowledges that the inquiry focuses on the time period between issuance and execution of the warrant, which, in the present case, was from November 15 to December 6, 2018.

[8] The dissent misinterprets our holding in two respects when it states that we (1) determine that the state's delay in executing the warrant was unreasonable, and (2) effectively require that "the state . . . do everything possible to serve the warrant within the limitation period." Footnote 3 of the dissenting opinion. We intend to say nothing of the kind. Rather, we hold that the state failed to produce *evidence* that it undertook efforts to meet its obligation to execute the warrant without unreasonable delay. In undertaking those efforts, the state was not required to do everything possible to timely execute the warrant, but it was required by our law to make efforts indicating that it was acting in earnest to meet the statutory deadline. See *State* v. *Swebilius*, supra, 325 Conn. 814 (recognizing that "[t]he policies underlying statutes of limitations are best served when . . . the state has a strong incentive to ensure that a defendant is provided timely notice of charges"). In both regards, these are important distinctions. Finally, to the extent that the dissent suggests that the delay in the present case was somehow presumptively reasonable "[i]n light of the need for coordination among various agencies to temporarily transfer custody of the defendant from prison to the court," we reject the notion that we can presume anything of the kind without supporting evidence. It took the state from November 15 to December 6 to execute the warrant in this case. The record is devoid of evidence about the period of time that is, in fact, reasonably necessary to execute an arrest warrant on a defendant in custody under the circumstances as they existed. In the absence of such evidence, we are unwilling to speculate on that issue. Moreover, we consistently have declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable." *State* v. *Crawford*, supra, 202 Conn. 451; see *State* v. *Swebilius*, supra, 809 (rejecting state's claim that "some delays in the execution of an arrest warrant . . . are so brief as to require no justification on the part of the state").